(C.D. 2620)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 24, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case consists of pails in chief value of wood, exported from Canada to Blaine, Wash., on various dates between October 30, 1962, and April 27, 1963. They were assessed with duty at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, and T.D. 52476, as manufactures in chief value of wood, and are claimed to be dutiable at 7½ per centum ad valorem under paragraph 407 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as casks, barrels, and hogsheads of woods, not specially provided for.

The pertinent provisions of the tariff act, as modified, are as follows:

[Par. 412, as modified by T.D. 52373 and T.D. 52476.] Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*  \*  \*  \*  \*  \*  \*

Other (except \* \* \*) _____ 16⅔% ad val.

[Par. 407, as modified by T.D. 51802.] Casks, barrels, and hogsheads (empty) of wood, not specially provided for (except beer barrels and beer kegs) _____ 7½% ad val.

At the trial, plaintiff called M. Leo Sweeney, who had been in the barrel making and cooperage business for 66 years, having places of business in Seattle, Wash., and Vancouver, B.C. (The invoices show Sweeney Cooperage, Ltd., Vancouver, B.C., as the seller of the merchandise and Sweeney Cooperage, Ltd., Seattle, Wash., as the buyer.) The business involves making, selling, and distributing barrels of all kinds. Staves and headings are sold to other cooperage shops or barrel factories in various parts of the United States and made-up barrels to Alaska, Mexico, and on the Pacific coast. He was familiar with the items described on the entries as 30-pound pails, paraffinic covers; 15-pound pails, paraffinic covers; 25-pound fir pails, complete with covers; 70-pound fish wooden pails, no cover, no handles, no paraffin; fir pails, complete with covers; 10-pound fish wooden pails, paraffinic wooden covers; and 25-pound fish wooden pails, paraffinic covers.

The witness described a pail as a barrel cut in half, made from wooden staves and heads, bound with metal loops, and with a handle. A sample representative of the imported merchandise, called a 25-pound fish pail, was received in evidence as plaintiff's exhibit 1. The article is a truncated cone of less diameter at the bottom. It is made of wooden staves held in place by three circular metal loops. The staves are straight and not bent. The exhibit has a handle and wooden pieces which fit into the top to form a cover.

According to the witness, such pails are used by fish and food packers, to hold fish or meat in brine, in the same or very similar ways, as kegs, barrels, or tierces are used. They are "tight," that is, they will not leak, but are not waterproof. A sample of a barrel which might be used to contain fish was received in evidence as plaintiff's exhibit 2. It is in the usual barrel shape and is about the same height as the pail. The witness said it is used largely to hold cheese, but could be used for pickled meat or pickled fish. Pails are imported with the covers on, or separately, dependent upon the desire of the customer, in the same manner as barrels are.

The witness testified that a barrel has its "bilge," or widest part, in the middle and is tapered upwards and downwards. Photographs

depicting various types of barrels manufactured by plaintiff's company were received in evidence, as plaintiff's collective exhibit 3. They all belong to the barrel family but are marketed under different names. There are slack barrels, nail kegs, 200- and 100-pound fish barrels, ham curing vats of 150 gallons, salmon tierces, tallow casks holding 900 pounds of tallow, and whisky barrels charred on the inside. They are all tapered both upward and downward with the bilge around the center. Barrels which are exported to the United States range in size from those holding 2½ gallons to those holding 110 gallons. A keg is a small barrel, usually holding 15 gallons or less. Beer kegs are heavier, are made of oak, and are very heavily hooped. Fish pails range from 5- to 70-pound sizes.

The witness called plaintiff's exhibit 1 a wooden pail, not a cask, barrel, or hogshead. It is bought and sold in the trade and commerce of the United States as a pail, not a barrel.

The staves of barrels are bent, but not those of wooden pails. There were received in evidence samples of a stave for a pail (plaintiff's exhibit 4) and a stave for a keg (plaintiff's exhibit 5). According to the witness, they are made of the same wood, processed and kiln-dried in the same way, set up and assembled almost identically in the cooperage shop. The difference is that exhibit 4 is tapered in one direction and exhibit 5 toward both ends. Exhibit 5 would also be bent when it is used to make a keg, but exhibit 4 would not be when it is used to make a pail.

Some barrels have much more bilge than others; some are almost straight. According to the witness, the less bilge there is, the less breakage there will be, and that is why some people like a pail, as there is no breakage at the center where the stave is bent.

Plaintiff's second witness was Gordon K. Davis, who has been a fish broker for some 30 years. He brings in salted salmon from Alaska in 200- or 500-pound barrels, reprocesses it to some extent, and sells it in 25-, 50-, or 100-pound quantities. Twenty-five- and 50-pound pails purchased from Sweeney Cooperage are used and also 100- and 200-pound barrels. Pails, kits, and barrels differ in size and shape but are equally suitable for the purpose of packaging and shipping fish. Pails and kits are used for packing a lesser amount of fish.

Plaintiff claims that the imported pails are classifiable under the provision for casks, barrels, and hogsheads in paragraph 407, *supra*, on the ground that they belong to the barrel family of products used to hold and transport merchandise.

The parties have called our attention to definitions of "cask," "barrel," and "pail" and we have noted others, among which are the following:

Webster's New International Dictionary, 1958 edition:

cask. A barrel-shaped vessel made of staves, headings, and hoops, usually closely fitted together so as to hold liquids—a generic term including *barrel, hogshead, pipe, butt, keg, tun,* etc.

barrel. A round bulging vessel or cask, of greater length than breadth, usually made of staves bound with hoops, and having flat ends or heads of equal diameter.

pail. A vessel made of wooden staves bound with iron hoops, of sheet metal (usually iron galvanized, tinned, or enameled), or of some other material, commonly circular in section and widening uniformly towards the top, or cylindrical, having a bail for a handle and often fitted with a cover.

Practically identical definitions appear in the 1930 edition and those following.

Funk & Wagnalls New Standard Dictionary, 1956 edition:

cask. A barrel-shaped wooden vessel or receptacle, made of staves, hoops, and flat heads. A cask for liquor or liquids may be larger or smaller than a barrel, and is usually of heavier material. Casks for nails or the like are usually smaller than a barrel and often loosely put together.

barrel. An approximately cylindrical vessel, usually slightly bulging in the middle, generally made of wooden staves held together by hoops.

pail. A conical or cylindrical vessel for carrying liquids, etc., properly having a bail, as distinguished from a dipper, or tub: made of wooden staves hooped with iron, or of tin-plate, galvanized iron, paper, etc., and often furnished with a cover.

Britannica World Language Dictionary:

barrel. A large, round, wooden vessel made with staves and hoops, having a flat base and top and slightly bulging sides.

pail. A cylindrical vessel for carrying liquids, etc., properly having a bail as a handle.

According to the record, wooden pails, such as those before the court, are made in cooperage shops in much the same way as barrels and casks are made and are used at least for some of the same purposes as barrels or casks are used for—the packing and transportation of fish. Did the Congress intend that all such cooperage products used for transporting merchandise should be classified under paragraph 407, *supra?* The language used in the Tariff Act of 1930, which is the same as that used in the Tariff Acts of 1922 and 1913, and is similar to that used in the Tariff Act of 1909, designates casks, barrels, and hogsheads, and certain boxes and shooks, by name, and does not include any provision for like or similar vessels or containers. On the other hand, in paragraph 1615, American goods returned, the language used is "steel boxes, casks, barrels, carboys, bags,

and other containers or coverings." The Summary of Tariff Information, 1929, which was before the Congress when the legislation which became the Tariff Act of 1930 was being prepared, contains the following (p. 935):

\* \* \* Casks, barrels, and hogsheads are containers, constructed of staves, with a distinctive bilge and flat ends. Casks are distinguished from barrels in that the staves and heading are thicker, and additional hoops are utilized to provide increased strength. Hogsheads are so called because of their greater capacity than casks or barrels.

\* \* \* \* \* \* \*

Production—The manufacture of cooperage includes not only casks, barrels, and hogsheads, but such containers as pails, tubes, kegs, kits, firkins, tierces, and churns. \* \* \*

Since the attention of the Congress was called to the fact that containers other than casks, barrels, and hogsheads were products of the same industry, and since it did not use language which would include them either *eo nomine* or by general description, it appears the Congress did not intend the paragraph to cover cooperage products which do not fall within the common meaning of the term, "Casks, barrels, and hogsheads." The Summary of Tariff Information, 1948, volume 4, covering wooden barrels, casks, and hogsheads of all kinds except wooden beer barrels and kegs states (p. 59):

In 1939 the cooperage industry of the United States operated 350 plants and employed 7,193 wage earners. Containers covered by this summary were valued at about 29 million dollars, or about 85 percent of the total value of production of the industry in 1939; the remaining 15 percent consisted of beer barrels and pails and tubs which are not here under consideration. \* \* \*

*George F. Dewey* v. *United States*, 25 CCPA 174, T.D. 49272, involved containers, invoiced as casks, made with wooden staves, having a bulge in the center, having a capacity of about 500 gallons, and designed and used for storing and aging wine, and occasionally for transporting the same. The trial court held that they were not classifiable as casks, barrels, or hogsheads, because their capacity was in excess of that of the largest of the three classes of containers named, as indicated by definitions of lexicographers. The court of appeals reversed, stating (p. 178):

An examination of the dictionary definitions of "barrel" and "hogshead" discloses that those terms also have two general meanings. One definition is of the article. This is given in terms of its form and structure and has no reference to its size, or the quantity which it may hold. The other meaning is that given the word when it is used not as applied to a physical object called by the name, but used as a unit of measure.

We are of the opinion that the terms as used in paragraph 407, *supra*, are used as the *names* of the articles, and that their meaning is to be determined in that light and without reference to the meaning which they may have when used in the other sense.

That the articles at issue here clearly meet the dictionary definitions of cask above quoted (and in each instance they are the primary definitions), when applied in the sense indicated, is obvious, and we think the casks provided for in paragraph 407 are the articles known by that name, and that it was error to take the meaning of the term, when used in the abstract as a unit of measure, and apply it with the result that an article which is a cask, in fact, is held not to be a cask in the sense of the statute.

We do not regard the statute as being in any sense ambiguous. Hence, there is no occasion for resort to the *noscitur a sociis* rule in order to construe it. It requires no construction. [Emphasis quoted.]

In *North American Mercantile Co.* v. *United States*, 67 Treas. Dec. 813, T.D. 47701, the merchandise consisted of articles about the size of an ordinary sugar barrel cut in half, made of wooden staves, bound with bamboo hoops, having flat ends or heads, but not bulging in the middle, and having a diameter practically the same as their length. This division held that they were not barrels "since it is conceded that they do not bulge in the middle; that they do not follow the proportions of the articles commonly known as barrels, and that they are only about half the size of an ordinary barrel." Except for the differences, not favorable to plaintiff, that the staves were bound with bamboo, not metal, and that no handle is mentioned, the merchandise apparently was practically identical to exhibit 1. If we held for plaintiff, it would seem we would have to overrule this case. The containers there involved were held properly classed under paragraph 409 as articles not specially provided for "wholly or partly manufactured of—bamboo," but as is clear from the opinion, the invasive effect of that paragraph, which we have often considered since, would not have overcome the specific provision for "Casks, barrels, and hogsheads" if that had covered the merchandise. *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536, and cases cited; *W. J. Byrnes & Co. et al.* v. *United States*, 52 Cust. Ct. 159, C.D. 2454; *Standard Trading Co. et al.* v. *United States*, 55 Cust. Ct. 295, C.D. 2593. Neither side in this case argues that the mere size of exhibit 1 is a determining factor, and our decision is not to be construed as influenced in any way by its size.

In *Mr. Jack Trager* v. *United States*, 43 Cust. Ct. 141, C.D. 2118, this division split on whether a wooden, brass-bound keg-like article, of about ½-gallon capacity, designed for use as a cooky jar, was or was not a cask or barrel. The prevailing and dissenting opinions do not light the present controversy, which turns on entirely different issues, except insofar as the prevailing view would not extend the terms used

in paragraph 407 to like or similar articles. The result here reached is consistent.

These three cases exhaust the reported barrel jurisprudence under paragraph 407 which counsel have cited or we have found in our own research, except for the reversed or overruled cases mentioned in *George F. Dewey* v. *United States, supra.*

Plaintiff's contention that "barrels" can be straight sided derives support from *Southern Scrap Material Co.* v. *United States*, 61 Treas. Dec. 715, T.D. 45551, in which the second division held that the coverage of paragraph 313 over steel for barrel hoops includes hoops for certain resin barrels with straight sides. But that case turns on testimony that the articles there involved were commonly known and referred to as barrels, which is not true of the pails now before us. They are commonly known as pails.

While an *eo nomine* provision ordinarily includes all forms of the articles named, it does not include articles which are in fact something else. *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699; *United States* v. *Durst Mfg. Co., Inc.*, 46 CCPA 74, C.A.D. 700; *Sears, Roebuck & Co.* v. *United States*, 46 CCPA 79, C.A.D. 701. While pails and barrels are forms of wooden containers, a pail is not one form of a barrel nor is a barrel one form of a pail. One cannot be classified under an *eo nomine* provision for the other.

For the reasons stated, we hold that the merchandise involved herein is not classifiable under paragraph 407, *supra*, under the provisions for "Casks, barrels, and hogsheads," but were properly classified by the collector under paragraph 412, *supra*, as manufactures in chief value of wood, not specially provided for. The protest is overruled, and judgment will be rendered for the defendant.